UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN GLENN HOLLIS,<br><br>Plaintiff,<br><br>v.<br><br>RISENHOOVER, et al.,<br><br>Defendants. | Case No. 17-00326 BLF (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO CLAIMS AGAINST DEFENDANTS RISENHOOVER AND ADAM; SETTING BRIEFING SCHEDULE FOR REMAINING DEFENDANTS TO FILE RENEWED SUMMARY JUDGMENT MOTION** |

(Docket No. 76)

Plaintiff, a California state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against medical personnel at Pelican Bay State Prison ("PBSP"), where Plaintiff was formerly housed. Finding the complaint stated a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs, the Court issued an order of service and directed Defendants to file a motion for summary judgment or other dispositive motion. (Docket No. 53.) Defendants S. Risenhoover, N. Adam, M. McCall, and J. Afdahl[1] filed a motion for summary judgment on the grounds that there is no genuine dispute of material facts that Defendants acted with deliberate indifference to

---

[1] Defendant J. Afdahl was sued as "Aldafe." (Compl. at 2.)

serious medical needs.[2] (Docket No. 76, hereafter "Mot."[3]) Plaintiff filed opposition, (Docket No. 86), and Defendants filed a reply, (Docket No. 87). For the reasons stated below, Defendants' motion for summary judgment is **GRANTED IN PART**.

## DISCUSSION

### I. Background

The underlying actions which are the basis of this action occurred while Plaintiff was formerly incarcerated at PBSP where Defendants were employed. At the time, Defendant S. Risenshoover was a nurse practitioner (now retired), Defendant N. Adam was a physician, Defendant M. McCall was a psychiatrist, and Defendant J. Afdahl was a psychiatric technician.

#### A. Plaintiff's Claims

Plaintiff claims that when he arrived at PBSP on January 21, 2016, he had several prescriptions to treat his chest pain, "borderline" diabetes, hypertension, and mental health. (Compl. at 5.) After Defendant Risenhoover examined him, she discontinued several of the prescriptions, stating that PBSP does not prescribe such medication. (*Id.* at 6-7.) After Plaintiff notified Defendants that he was having chest pain, problems with his heart, and extreme pain in his lower back and shoulder, they failed to respond. (*Id.* at 7.) Plaintiff also claims that Defendant McCall and Afdahl discontinued his mental health medication which has caused him to suffer psychologically, including depression, anxiety, and

---

[2] Defendants also asserted failure to exhaust administrative remedies with respect to the claims against Defendants McCall and Afdahl but withdrew the argument in their Reply after Plaintiff successfully showed in opposition that he had exhausted claims against them in a separate inmate grievance. (Reply at 2.)

[3] In support of the motion, Defendants provide the declaration of Defendant A. Adam, (Docket No. 76-2), along with exhibits, (Docket Nos. 76-3, 76-4). Defendants also provide the declaration of Deputy Attorney General Harry T. Gower, (Docket No. 76-5), with exhibits, (Docket Nos. 76-6, 76-7), but these were only relevant with respect to their exhaustion of administrative remedies argument which has been withdraw. *See supra*, fn. 2.

2

symptoms associated with bipolar. (*Id.* at 9-10.)

Based on the foregoing allegations, the Court found the complaint, liberally construed, stated a cognizable claim under the Eighth Amendment. (Docket No. 53 at 2.)

### B. Statement of Facts[4]

Plaintiff arrived at PBSP on January 21, 2016. During intake that day, Nurse C. Timoshenko, not a party to this action, conducted a review of Plaintiff's medical records and an initial health screening, and found that Plaintiff had the following medical conditions: hypertension (high blood pressure), pure hyperglyceridemia (elevated triglycerides), history of chest pain, cataracts, lumbar degenerative disk disease, bilateral flat feet, shoulder impingement, and gastroesophageal reflux disease (GERD). (Adam Decl. ¶ 3, Ex. A, AG 073-074.) Because of his shoulder problems, Plaintiff had a chrono [order] for an extra pillow and a lower/bottom bunk assignment. (*Id.*, Ex. A, AG 157.)

Plaintiff's previously prescribed medications, which did not arrive with him at PBSP, were Buspirone (for anxiety), aspirin (for shoulder pain), clotrimazone cream (for foot fungus), lamotrigine (for bipolar disorder), Mintox (for excess stomach acid), metformin (for pre-diabetes), metropol (for high blood pressure), nitroglycerin (for acute angina), omeprazole (i.e., Prilosec, for ulcers/heartburn), simvastatin (to lower cholesterol levels) and tramadol (for acute or severe pain). (Adam Decl. ¶ 4, Ex. A, AG 073-074.)

When Plaintiff complained of chest pain at the urgent care clinic on January 21, 2016, Dr. Andrew Dorfman, not a party to this action, ordered him metoprolol 25 mg. and sublingual nitroglycerin over the telephone. (Adam Decl. ¶ 5, Ex. A, AG 075, 077-081.) Dr. Dorfman noted that the EKG taken at the urgent care clinic by the RN that same day showed no change from an EKG taken on October 14, 2015, three months before. (*Id.*)

The same day (January 21, 2016), Physician's Assistant Laurie Thomas, not a party to this action, renewed Plaintiff's previous prescription for the pain medication tramadol,

---

[4] The following facts are undisputed unless otherwise indicated.

3

but only for seven days until Plaintiff could be evaluated by his Primary Care Provider ("PCP"). (Adam Decl. ¶ 6, Ex. A, AG 098.)

According to Defendants, tramadol is a synthetic opioid analgesic drug that is highly addictive. (Adam Decl. ¶ 7.) Addition to opioid medications like tramadol results in the need for stronger and stronger doses to alleviate the pain, and also affects patients' respiration. (*Id.*) Moreover, because of tramadol's stimulant effects, it can allow people to feel themselves to be high-functioning while taking dangerously high doses. (*Id.*) This combination is dangerous. (*Id.*) Withdrawal from tramadol is similar to withdrawing from an opiate medication, with symptoms such as depression, anxiety, fatigue, GI distress, etc. (*Id.*)

According to Defendants, at the time of these events, the medical community was becoming increasingly aware of the epidemic problems of opioid use. (*Id.*) In addition, recent studies showed that long term opioid treatment does not provide medical benefits for chronic pain such as Plaintiff reported. (*Id.*) As a result, the California Correctional Health Care Services began to discontinue use of opioids for chronic pain, instead reserving opioid prescription only for cancer patients and for those in acute pain for short periods of time. (*Id.*)

On January 27, 2016, Defendant Risenhoover reviewed Plaintiff's past medical records with him and discussed with Defendant Dr. Adam by telephone the plan to taper off Plaintiff's tramadol medication. (Adam Decl. ¶ 8, Ex. A, AG -82-086.) In Defendant Adam's medical judgment, tramadol was not medically indicated for Plaintiff at the time because he was not in severe pain, his pain was chronic and not acute, and the risks of prescribing highly addictive tramadol far outweighed the benefits. (*Id.*) Defendant Risenhoover needed Defendant Adam's approval to begin tapering Plaintiff off tramadol because in the state of California, a nurse practitioner like Defendant Risenhoover cannot independently prescribe or otherwise manage a patient's medication but must be supervised by a medical doctor. (*Id.*) Defendants Risenhoover and Adam also agreed to

4

discontinue nitroglycerin, metformin, aspirin, simvastatin, and anti-fungal cream because they also were not medically indicated according to Plaintiff's latest physical examination and laboratory results. (*Id.*) Plaintiff did not have angina, diabetes, muscle or joint pain, high cholesterol or foot fungus. Plaintiff agreed to this plan of care. (*Id.*)

Defendant Dr. McCall was assigned as Plaintiff's psychiatrist. (Adam Decl. ¶ 9, Ex. A, AG 099.) On February 2, 2016, Defendant McCall ordered prescriptions of the psychotropic medications Buspirone and Lamotrigine for 90 days, for Plaintiff's anxiety and bipolar disorders. (*Id.*)

According to Defendants, on February 9, 2016, psychiatric technician Defendant Afdahl, who was assigned to dispense medication to inmates and to inspect their mouths to make sure they swallow the medication, indicated that Plaintiff refused to show her his mouth. (Adam Decl. ¶ 10, Ex. A, AG 101-102.) According to Plaintiff, this report was "untrue" and a "false allegation" by Defendant Afdahl. (Opp. at 30.) This incident was reported to Defendant Adam. (Adam Decl. ¶ 10, Ex. A, AG 103.) These types of incidents are a concern for several reasons. (Adam Decl. ¶ 10.) There are custody and safety concerns; in prisons it is common for inmates to "cheek" (i.e., not swallow) their medications, and then save the medications for later sale to other inmates. Sometimes inmates save up their medications in this way and then take them all at once, which can result in overdoes. (*Id.*) Finally, and most importantly, there is a medical concern, because if an inmate is not swallowing his medication, then he is not receiving the treatment he needs. (*Id.*)

As a result of the above incident, on February 10, 2016, Defendant McCall prescribed that Plaintiff's medication was to be crushed and floated in a cup of water when given. (Adam Decl. ¶ 11, Ex. A, AG 105.)

Plaintiff complained of chest pain on February 26, 2016, and again on March 1, 2016, but did not appear to be in distress. (Adam Decl. ¶ 12, Ex. A, AG 107-109, 111-119.) An EKG performed on March 1, 2016, showed normal sinus rhythm, which means a

5

normal heart beat, both with respect to the heart rate and rhythm. (*Id.*)

The only time Defendant Adam saw Plaintiff was on April 5, 2016, at which time she explained to Plaintiff why his medications were discontinued. (Adam Decl. ¶ 13, Ex. A, AG 123, 125-130.) Plaintiff's lipids were within normal limits after he had been off simvastatin for two months. (*Id.*) He was not on metaformin because he was not diabetic. (*Id.*) He was not on nitroglycerin because his chest pain did not appear related to cardiovascular disease. (*Id.*)

On the following day, April 6, 2016, Defendant Adam ordered that Plaintiff undergo lab tests in a month to monitor any changes in his condition, and also that he receive blood pressure checks every week. (Adam Decl. ¶ 14, Ex. A, AG 130-131.)

On April 26, 2016, Plaintiff was admitted to the MHCB (Mental Health Crisis Beds) alternative housing. (Adam Decl. ¶ 15, Ex. A., AG 143-144.) Plaintiff's regular medications were discontinued, because the MHCB unit would now be prescribing for him. (*Id.*)

On June 3, 2016, Plaintiff was transferred to the Department of State Hospitals and was no longer under the jurisdiction of California Correctional Health Care Services. (Adam Decl. ¶ 16.)

On October 26, 2016, Plaintiff was returned to PBSP, and on November 6, 2016, he requested that his lower bunk chrono to be discontinued. (Adam Decl. ¶ 17, Ex. A, AG 153, 156.) Plaintiff stated that he did not need a lower bunk: "I play basketball, I don't have any difficulties doing my activities of daily living"; "I am very active, and I'm feeling very good now." (*Id.*) He was looking into being housed with another inmate/patient who has a lower bunk assignment and he was willing to take an upper bunk so he could be housed with the inmate who needed a lower bunk. (*Id.*, Ex. A, AG 149, 157.)

## II. <u>Summary Judgment</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to

6

judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the

7

inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is

8

insufficient, as a matter of law, to establish deliberate indifference, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

Defendants state that for the purpose of this motion, they will not dispute that Plaintiff had a serious medical need. (Mot. at 9.) Instead, they assert that Plaintiff cannot show the second prong, i.e., that they subjectively, were deliberately indifferent to his medical needs. (*Id.* at 9, 11.)

### 1. **Defendants Risenhoover and Adam**

Plaintiff claims that shortly after he arrived at PBSP, Defendant Risenhoover discontinued several of his prescriptions, including tramadol and narcotic pain medications, (Compl. at 6), and that later when he complained of various ailments due to the loss of these medications, she and Defendant Adam failed to respond, (*id.* at 7-8).

The evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against Defendants Risenhoover and Adam because he fails to satisfy the second prong, *i.e.*, that Defendants were subjectively, deliberately indifferent to Plaintiff's medical needs because they failed to take reasonable steps to abate a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834, 837. The undisputed evidence shows that on January 27, 2016, Defendant Risenhoover examined Plaintiff's past medical records and discussed with Defendant Adam a plan to taper Plaintiff off tramadol. *See supra* at 4. In Defendant Adam's medical opinion, tramadol was not medically indicated for Plaintiff at the time because he was not in severe pain, his pain was chronic rather than acute, and the risks of prescribing tramadol, a highly addictive

9

opioid, far outweighed the benefits. *Id.* They also agreed to discontinue several other of Plaintiff's medications because they were not medically indicated based on Plaintiff's latest physical examination and laboratory results: he did not have angina and therefore did not need nitroglycerin; he did not have diabetes and therefore did not metformin; he did not have muscle or joint pain and therefore did not aspirin; he did not have high cholesterol and therefore did not need simvastatin; and he did not have foot fungus and therefore did not need clotrimazone cream. *Id.* at 4-5. According to Plaintiff's allegations, Defendant Risenhoover told him that "she didn't see a need for plaintiff to be prescribed tramadol, pain medication, metformin, nitroglycerin." (Compl. at 6.) Because Defendants believed that these medications were not medically indicated, it cannot be said that they acted with deliberate indifference by discontinuing unnecessary medications. In other words, it cannot be said that Defendants knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837.

In opposition, Plaintiff asserts that his previous doctors and health care providers had prescribed him the several medications due to several risk factors. (Opp. at 7.) Plaintiff also asserts that Dr. Joseph Walker had written an assessment plan on October 1, 2008, to put him back on tramadol with which medical staff had agreed. (*Id.* at 11, Exs. C, D.) Plaintiff asserts that Defendants Risenhoover and Adam's decision, in contrast to this specialist's recommendations, was therefore clearly unreasonable. (*Id.* at 20.) Plaintiff also asserts that Defendants were aware that he had complained of chest pain and extremely high blood pressure on the day of his arrival (January 21, 2016), and that Dr. Dorfman's prescriptions had immediately relieved his symptoms. (*Id.* at 15.) Plaintiff asserts that Defendants' decision to discontinue his medication was unreasonable because the "treatment for all the reasons my care providers prescribed me the medications was not yet completed consistent with my medical treatment plan which was to continue taking all my medications as prescribed." (*Id.* at 24.)

10

Plaintiff's assertion that Defendants Risenhoover and Adam's treatment plan was unreasonable because it was different from his previous medical providers' treatment plan is unavailing. First of all, the specialist Dr. Walker's assessment plan was made nearly eight years ago. Even if other medical providers agreed with this plan, there is no evidence that this treatment plan was still appropriate eight years later, when Plaintiff arrived at PBSP in 2016. Furthermore, even it was, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). As such, the fact that Dr. Dorfman decided it was medically appropriate to prescribe certain medications on January 21, 2016, which were later discontinued by Defendants, is not sufficient to establish a § 1983 claim against Defendants on the grounds that their chosen course of treatment deviated from that of other medical providers. *Id.* Furthermore, Plaintiff submits no evidence indicating that Defendants consciously chose to discontinue specific medications knowing their decision would cause an excessive risk of harm to Plaintiff. (Reply at 3.) Rather, the evidence shows that Defendants found the medications were no longer medically indicated as Plaintiff did not suffer from any the conditions which warranted the medication, and that they believed that the long-term risks of tramadol far outweighed the benefits. *See supra* at 4-5. Plaintiff points to no evidence in opposition to refute the fact that tramadol is an addictive opioid and that it was not the only appropriate treatment for his chronic pain. Rather, he simply asserts that tramadol was effective to treat his pain, and that without it his severe pain increased. (Opp., Ex. E at 2.) However, this assertion merely states a difference of opinion between Plaintiff and Defendants with regards to treatment and is insufficient to state a § 1983 claim. *See Franklin*, 662 F.2d at 1344. Nor is the fact that tramadol was later re-prescribed evidence that Defendants' actions were deliberately indifferent in light of their belief that weaning Plaintiff off tramadol was the best course of action at the time. (Opp., Ex. E at 3.)

11

With respect to Plaintiff's allegation that Defendants did not respond to his complaints of chest plain, the undisputed facts show that when he complained on February 26, 2016, and March 1, 2016, Plaintiff was seen and evaluated by medical staff. *See supra* at 5; (Adam Decl. ¶ 12, Ex. A, AG 107-109, 111-119). Plaintiff's medical records indicate that he did not appear to be in distress and his EKG showed normal sinus rhythm. *Id*. Accordingly, it cannot be said Defendants acted with deliberate indifference when Plaintiff was immediately seen and evaluated for his chest pain complaints, and after an examination and testing, there was no indication that Plaintiff was suffering from any distress to warrant a change in treatment plan. The notes from Defendant Adam's meeting with Plaintiff on April 5, 2016, indicate that she discussed in detail with him about her chosen course of treatment; there is no indication in these notes that she was aware that her treatment plan would expose Plaintiff to an excessive risk of harm. (Adam Decl., Ex. A, AG 126-128.) In conclusion, Plaintiff has failed to point to "facts from which the inference could be drawn" that an excessive risk of harm exists, nor has he shown that Defendants in fact drew that inference. *See Farmer*, 511 U.S. at 837. Even if Defendants should have been aware of the risk but were not actually aware of it, then they have not violated the Eighth Amendment, no matter how severe the risk. *Gibson*, 290 F.3d at 1188.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law. *Id*.; *Celotex Corp.*, 477 U.S. at 323.

### 2. **Defendants McCall and Afdahl**

Plaintiff claims that Defendants McCall and Afdahl "conspired" to have his mental health medication discontinued, causing him to suffer psychologically, including

12

depression, anxiety, and symptoms associated with bipolar. (Compl. at 8-9.) More specifically, Defendants ended up reducing one of Plaintiff's mental health medications to a lower dosage. (*Id.* at 9.) Plaintiff claims that when he notified Defendants about his anxiety, increased depression, mood swings, and bipolar symptoms, they failed to respond. (*Id.* at 10.)

Defendants do not dispute that Plaintiff suffers from serious mental conditions. Defendants' only response on the merits of this claim was presented in their reply as they withdrew their original argument that Plaintiff failed to administratively exhaust the claims against them. *See supra* at 2, fn. 2. Defendants assert that based on the inmate grievances, there is no evidence that they acted with deliberate indifference to Plaintiff's medical needs. (Reply at 2-3.) However, their arguments in reply are not sufficient to show the absence of a genuine dispute as to any material fact because the second prong is still in dispute, *i.e.*, that Defendants were subjectively, deliberately indifferent to Plaintiff's medical needs because they failed to take reasonable steps to abate a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834, 837. Plaintiff alleges that Defendant Afdahl made a "false claim" that Plaintiff was "cheek[ing]" his medication, which resulted in the reduction of that medication and further harm. (Compl. at 9.) The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 631. In their reply, Defendants only rely on the prison's response to Plaintiff's inmate grievances to assert that the *prison* was being responsive to Plaintiff's concerns. (Reply at 3.) They make no assertions with respect to Defendant McCall and Afdahl's state of mind in taking the alleged actions. Accordingly, Defendants McCall and Afdahl have failed to meet their initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact with respect to the claim that they acted with deliberate indifference when they allegedly interfered with Plaintiff's mental health medication for no justifiable reason. *See Celotex Corp.*, 477 U.S.

13

at 323. Because the Court finds no bad faith in Defendants' failure to answer on the merits in the instant summary judgment motion, Defendants McCall and Afdahl shall be granted another opportunity to file a renewed summary judgment on the merits that is supported with the appropriate affidavits and evidence.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants S. Risenhoover and N. Adam's motion for summary judgment is GRANTED. The Eighth Amendment claims against them are **DISMISSED with prejudice**. *See Celotex Corp.*, 477 U.S. at 323. The Clerk shall terminate these Defendants from this action.

2. The summary judgment motion with respect to Defendants M. McCall, and J. Afdahl is **DENIED** without prejudice.

3. No later than **forty-two (42) days** from the date this order is filed, Defendants McCall and Afdahl shall file a motion for summary judgment or other dispositive motion with respect to the Eighth Amendment claim against them.

   a. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If any Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

   b. **In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).** *See Woods v. Carey*, 684 F.3d 934, 940 (9th Cir. 2012).

4. Plaintiff's opposition to the dispositive motion shall be filed with the Court

14

and served on Defendants no later than **twenty-eight (28) days** from the date Defendants' motion is filed.

5. Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam); *Brydges v. Lewis*, 18 F.3d 651, 653 (9th Cir. 1994).

6. Defendants *shall* file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

7. Plaintiff may also file a cross-motion for summary judgment in the same time provided. Defendants' opposition to Plaintiff's cross-motion shall be filed no later than **twenty-eight (28) days** from the date Plaintiff's motion is filed. Plaintiff's reply shall be filed no later than **fourteen (14) days** after Defendants' opposition is filed.

8. The summary judgment motions shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motions unless the Court so orders at a later date.

9. All communications by the Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

10. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

11. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a

15

timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

12. Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

This order terminates Docket No. 76.

**IT IS SO ORDERED.**

Dated: July 22, 2019

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ In Part; Briefing MSJ for Remaining Defs.
PRO-SE\BLF\CR.17\00326Hollis_partialgrant.msj&brief

16