UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN GLENN HOLLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>RISENHOOVER, et al.,<br><br>    Defendants. | Case No. 17-00326 BLF (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket Nos. 104, 123) |

    Plaintiff, a California state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 based on care he received while at Pelican Bay State Prison ("PBSP"), where he was formerly housed. Dkt. No. 1. Finding the complaint stated a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs, the Court issued an order of service and directed Defendants to file a motion for summary judgment or other dispositive motion.[1] Dkt. No. 53. Defendants Dr. McCall and J. Afdahl filed a motion for summary judgment on the grounds that they did not act with deliberate

---

[1] The Court granted Defendants' first motion for summary judgment with respect to the Eighth Amendment deliberate indifference claim against Defendants S. Risenhoover and N. Adam and set briefing on the remaining claims. Dkt. No. 99.

indifference to serious mental health needs. Dkt. No. 104.[2] Plaintiff filed opposition, Dkt. No. 137, and Defendants filed a reply, Dkt. No. 138. Plaintiff filed a cross-motion for summary judgment. Dkt. No. 123. Defendants filed opposition, Dkt. No. 130, and Plaintiff filed a reply,[3] Dkt. No. 135, along with a request for judicial notice,[4] Dkt. No. 136. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's cross-motion is **DENIED**.

## DISCUSSION

### I. Statement of Facts[5]

The underlying events which are the basis of this action occurred while Plaintiff was formerly incarcerated at PBSP. At the time, Defendant M. McCall was a psychiatrist employed by the CDCR as a Staff Psychiatrist for the Telepsychiatry Program, McCall Decl. ¶ 1, and Defendant J. Afdahl was a psychiatric technician at PBSP.

Plaintiff arrived at PBSP on January 21, 2016, and received an Initial Health Screening, Form CDCR 7277. McCall Decl. ¶ 4; Ex. A at AG 73-74. The record of that screening noted that Plaintiff was being treated for the following mental health conditions:

---

[2] In support of their summary judgment motion, Defendants provide the declaration of Defendant M. McCall, Dkt. No. 104-1, hereinafter "McCall Decl.," along with an exhibit containing authenticated copies of relevant portions of Plaintiff's medical and mental health records, Dkt. No. 104-2, hereinafter "Ex. A" paginated as "AG."

[3] In reply to his summary judgment motion, Plaintiff asserts that Defendant McCall's declaration is "improper" because it is not signed. Dkt. No. 135 at 2. However, the declaration filed with the Court bears her signature and is therefore not defective as Plaintiff asserts. Dkt. No. 104 at 9.

[4] Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018). The request for judicial notice is DENIED with respect to the case law listed because Plaintiff does not explain what indisputable facts he wishes to present therein. It is also DENIED with respect to the excerpt from a book presented because it does not contain facts that are "not subject to reasonable dispute." *Id.*

[5] The following facts are undisputed unless otherwise indicated.

2

Mood Disorder, Exhibitionism [and] Bipolar Disorder, NOS (Not Otherwise Specified). *Id.* at ¶ 5; Ex. A at 74. Plaintiff also had prescriptions for the following mental health medications: Buspirone ("Buspar") for anxiety and Lamotrigine (brand name "Lamictal") for Bipolar Disorder.[6] *Id.*; Ex. A at 75. It was noted that Plaintiff had received treatment for mental illness in the Enhanced Outpatient Program (EOP). *Id.*; Ex. A at 74.

According to Plaintiff's mental health records, he was seen by PBSP psychologist, Dr. Jayson Gawthorpe, on January 25, 2016. McCall Decl. ¶ 6; Ex. A at AG 162. According to the progress notes, Dr. Gawthorpe noted that Plaintiff was angry and frustrated but calmed down during the session and his behavior was appropriate to the setting. *Id.* Dr, Gawthrope noted that Plaintiff was diagnosed with Bipolar Disorder, NOS; Exhibitionism; and Antisocial Personality Disorder. *Id.* On January 31, 2016, mental health staff noted that Plaintiff had missed or refused his bipolar medication, Lamictal, for three straight days. *Id.*; Ex. A at AG 165. Plaintiff's records also indicated that he had previously refused Lamictal on April 27, 2015. *Id.*; Ex. A at AG 160.

Defendant McCall was assigned as Plaintiff's telemedicine psychiatrist in late January 2016. McCall Decl. ¶ 7. At that time, Defendant McCall had over 15 years of experience as a treating and consulting psychiatrist, including the treatment of anxiety, manic depression and bipolar disorder. *Id.* The classification of "NOS" with respect to Plaintiff's Bipolar Disorder diagnosis is used to document symptoms that are consistent with bipolar disorder but fall short of the criteria needed to make a definitive diagnosis. *Id.* In general, NOS is most commonly ascribed when a mood disorder is characterized by depression alternating with short episodes of hypomania (a milder form of mania). *Id.*

On February 2, 2016, Defendant McCall met with Plaintiff for a psychiatric evaluation. McCall Decl. ¶ 8; Ex. A at AG 166-171. She noted that his last visit to a psychiatrist was on December 28, 2015, when he reported mood swings and at times, a

---

[6] Throughout this order, "Buspirone" and "Buspar" are used interchangeably, as are "Lamictal" and "Lamotrigine."

3

desire to "expose himself." *Id.*; Ex. A at AG 166. At their meeting, Plaintiff discussed his family history and substance abuse issues, which are documented in the records. *Id.* Defendant McCall noted that Plaintiff was alert, well-groomed and semi-cooperative although he lacked boundaries in asking personal questions. *Id.*; Ex. A at AG 167. She also noted that Plaintiff's mood and affect were angry but not threatening. *Id.* Defendant noted that Plaintiff appeared to be intelligent but impulsive and sometimes had suicidal and homicidal ideations. *Id.*; Ex. A at AG 168, 171. Defendant suspected that Plaintiff's history of mood variability was driven mostly by his personality structure and attempt to manage his situation and meet his needs. *Id.*; Ex. A at AG 168. Defendant's assessment was that Plaintiff's symptoms were not consistent with his diagnosed history of bipolar disorder. *Id.* Defendant believed that Plaintiff's mood varied way too quickly for his symptoms to even be categorized as hypomania. *Id.* Therefore, Defendant questioned the need for Lamictal to treat Plaintiff's symptoms as his diagnosis needed to be clarified. *Id.*

Based on her evaluation and Plaintiff's history of not adhering to his prescription, Defendant McCall began considering whether to taper Plaintiff off Lamictal. McCall Decl. ¶ 9. At the February 2, 2016 TelePsychiatry session, Defendant educated Plaintiff that his varying adherence to his medication could increase his risk for contracting a potentially fatal rash that is associated with Lamictal. *Id.*; Ex. A at AG 168. In addition, Defendant informed Plaintiff that if he continued his variable adherence, she would have to discontinue the medication for his safety. *Id.* Nevertheless, because Plaintiff was a new patient to her and had an existing diagnosis, Defendant McCall ordered prescriptions of both Buspirone and Lamictal for 90 days, to treat Plaintiff's diagnosed anxiety and bipolar disorders. *Id.*; Ex. A at AG 169. Defendant also directed Plaintiff to follow up with her in three weeks for continued supportive therapy and medication management and to follow up with his on-site primary care psychologist, Dr. Gawthorpe, for weekly group therapy. *Id.*

According to Plaintiff's mental health records, Dr. Gawthorpe developed a

4

treatment plan on February 4, 2016, based on a consultation with Plaintiff and additional consultation with the Treatment Team Members. McCall Decl. ¶ 10; Ex. A at AG 172-185. The Treatment Team included Defendant McCall, psychologist Dr. Sayer, and a correctional counselor from PBSP. *Id.*; Ex. A at AG 178. It was noted that Plaintiff presented in a depressed mood, but that his behavior was appropriate to the setting. *Id.*; Ex. A at AG 172. It was also noted that Plaintiff was mostly calm with an occasional burst of agitation. *Id.* Dr. Gawthorpe had Plaintiff discuss his medical conditions (diabetes, hypertension, chronic pain) as well as his family history and long history of substance abuse. *Id.* They also discussed his past treatment for impulsive behavior, exhibitionism (when agitated), and mood lability (an emotional response that is irregular or out of proportion to the situation). *Id.* Dr. Gawthorpe made the following diagnoses: Bipolar II Disorder; Unspecified Depressive Disorder with mixed features, and Exhibitionism. *Id.*; Ex. A at AG 172-174. Dr. Gawthorpe and Plaintiff established short-term and long-term goals with respect to modifying the negative aspects of Plaintiff's behavior. *Id.*; Ex. A at AG 175-176. Dr. Gawthorpe saw Plaintiff again on February 5, 2016, for follow up and noted the following diagnoses: Bipolar Disorder NOS, Exhibitionism and Antisocial Personality Disorder (ASPD). *Id.*; Ex. A at AG 184-185.

   According to Plaintiff's medical records, psychiatric technician Defendant J. Afdahl, who was assigned to dispense medication to inmates and to inspect their mouths to make sure they swallow the medication, reported that on the morning of February 9, 2016, Plaintiff refused to show her his mouth even though directed to several times. McCall Decl. ¶ 11; Ex. A at AG 101. Plaintiff was therefore placed under a Direct Observation Therapy ("DOT") order, specifically to make sure that he actually swallowed his medications. *Id.* These types of incidents are a concern for several reasons, including custody and safety concerns   McCall Decl. ¶ 11. It was common for inmates to "cheek" (i.e., not swallow) their medications and then save the medications for later sale to other inmates, or sometimes inmates save up their medications in this way and then take them all

at once, resulting in an overdose. *Id.* Specifically with respect to Lamictal, taking more than prescribed greatly increases the risk of a fatal rash. *Id.* Lastly, there is also a medical concern because if an inmate is not swallowing his medication, then he is not receiving the treatment he needs. *Id.* According to Plaintiff, he did not cheek his prescribed medications on February 9, 2016. Dkt. No. 137 at 47.

On February 10, 2016, Defendant McCall discontinued Plaintiff's prescription for Lamictal with a plan to discuss safer alternatives. McCall Decl. ¶ 12; Ex. A at AG 103. She based her decision on the cheeking incident described above and Plaintiff's past issues with adherence to taking Lamictal (April 2015 and January 2016). *Id.* Defendant McCall had previously discussed with Plaintiff at their February 2, 2016 meeting, the increased risk of a potentially fatal rash that could result from not taking his medication as prescribed. *Id.*; Ex. A at AG 167, 189. Furthermore, Defendant McCall had already questioned the need for Lamictal based on his clinical presentation as described above after her initial meeting with him on February 2, 2016. *See supra* at 4. Due to this incident and past adherence issues, Defendant McCall prescribed and directed that Plaintiff's medication, Buspirone, to be crushed and floated in a cup of water when given. McCall Decl. ¶ 12; Ex. A at 105, 189-190. There is no indication in the records, nor does Plaintiff allege, that he did not receive his medication crushed and floated in a cup of water as prescribed. *Id.*

According to Plaintiff, Defendant McCall cancelled his Lamotrigine prescription on February 10, 2016, without any further examination or any discussion with him, nor did she inform him about any dangers about the medication. Dkt. No. 137 at 47, Hollis Decl. He also states that the instructions for Lamotrigine "explicitly state[] that Lamotrigine should not be suddenly stopped," and that he had adverse effects along with increased symptoms when Defendant McCall discontinued the medications. *Id.* at 52. Plaintiff states that Defendant also decreased his Buspirone medication. *Id.* at 47. After the changes to his medication on February 10, 2016, Plaintiff started having increased anxiety,

6

feeling uneasy, and worrying. *Id.* at 49. Plaintiff states that when he notified Defendants McCall and Afdahl about his worsening symptoms, they did nothing for him. *Id.* He states that he also notified them of his increased depression, mood swings, and other increased symptoms associated with bipolar disorder, and they did nothing. *Id.*; *id.* at 53. Plaintiff states that he was never charged with hoarding prescription medications nor being in possession of any "saved up" prescribed medication. *Id.* at 50. Lastly, Plaintiff states that he did not have any life-threatening rash. *Id.*

On February 23, 2016, Defendant McCall had a TelePsychiatry meeting with Plaintiff to discuss his medication management. McCall Decl. ¶ 13; Ex. A at AG 192-195. Defendant reviewed the relevant treatment records prior to this encounter, including the notes from February 2, 9 and 10, indicating that they had discussed Plaintiff's lack of adherence to the Lamictal medication, the cheeking incident, and the discontinuation of the Lamictal prescription due to the serious and possibly fatal consequences of his failure to adhere to the prescription. *Id.*; Ex. A at AG 192. Plaintiff became very confrontational during this meeting and accused Psych Tech Afdahl of lying about the cheeking incident. *Id.* Plaintiff also accused his mental health providers of being "police sympathizers" and racist and indicated that he was going to file a lawsuit against Defendant and others. *Id.* In response, Defendant McCall offered an alternate provider (advanced practitioner) and also suggested decanoate, which is a long-acting form of psychiatric medication (antipsychotic-type) that works by helping to restore the balance of certain natural substances (neurotransmitters) in the brain. *Id.* According to Defendant, decanoate helps patients think more clearly and is used for those who have trouble remembering to take their medication or there is a question regarding full adherence to their prescription. *Id.* According to the progress notes from this meeting, Plaintiff declined these suggestions and said he would refuse to work with her in the future. *Id.* According to Plaintiff, Defendant McCall did not offer decanoate or any other medication at this date, and he denies refusing such a prescription. Dkt. No. 137 at 48. His mental health records show that on February

7

25, 2016, Plaintiff submitted a health care services request form, asking to change his clinician. McCall Decl., Ex. A at AG 196.

On March 8, 2016, Defendant McCall had a TelePsychiatry meeting with Plaintiff to discuss his medication management. McCall Decl. ¶ 14; Ex. A at AG 197-200. Based on Plaintiff's behavior and comments at their February 23, 2016 meeting, Defendant McCall had asked for his care to be transferred another psychiatrist; however, she was asked, presumably by the prison, to try to work with him. *Id.*; Ex. A at AG 197. During this meeting, Plaintiff reiterated that he did not want to work with her and informed her that he filed a 602 Appeal regarding her discontinuation of his Lamictal and that he was going to file a lawsuit against her. *Id.* As with her prior evaluations of Plaintiff's behavior, Defendant McCall's impression was that he was a patient with mood regulation and behavioral control issues who exhibited impulsivity and dominating behavior. *Id.*; Ex. A at AG 198. Plaintiff attempted to control his situation and control others, and distrusts authority and custody, i.e., any system or person that he believes is trying to control him. *Id.* Although he could become frustrated and angry easily, Plaintiff did not exhibit psychotic, suicidal or homicidal ideations. *Id.* Based on her encounters and review of the records, Defendant McCall's working diagnosis was that Plaintiff had an unspecified personality disorder with antisocial and narcissistic traits. *Id.* It was not Defendant McCall's opinion that Plaintiff was clearly Bipolar; rather, she believed they still had to clarify whether he was unipolar vs. bipolar vs. a personality structure issue. *Id.* According to Plaintiff, he needed medication to treat his bipolar disorder, as diagnosed by the Treatment Team on February 4, 2016. Dkt. No. 137 at 9-10.

Based on her evaluations and encounters with Plaintiff, including his dissatisfaction with TelePsychiatry visits, Defendant McCall suggested that they have him follow up with an on-site psychiatrist for his continued supportive and medication management. McCall Decl. ¶ 15; Ex. A at AG 199. She also suggested, based on his symptoms and clinical presentation, that Plaintiff transition from the Enhanced Outpatient Program (EOP) to the

8

Correctional Clinical Case Management System (CCCMS), which would require fewer clinical visits and be less restrictive in terms of mobility and activity at the facility. *Id.* Defendant McCall did not want to restart Lamictal because of Plaintiff's demonstrated problem with adherence to that prescription and the resulting safety issues (e.g., potentially fatal rash). *Id.*

Defendant McCall had no contact with Plaintiff after March 8, 2016. McCall Decl. ¶ 16. According to Plaintiff's mental health records, on March 29, 2016, PBSP psychologist Dr. Hutchinson restarted Plaintiff's prescription for Lamotrigine (Lamictal) at 25 mg daily for two weeks and increased to 50 mg daily thereafter. *Id.*; Ex. A at AG 122. Dr. Hutchinson did not discuss his decision with Defendant McCall, nor was she aware of his reasoning. *Id.*

According to his mental health records, Plaintiff was admitted on April 26, 2016, to the Mental Health Crisis Beds ("MHCB") alternative housing and seen by Staff Psychiatrist Dr. Theodore Utecht. McCall Decl. ¶ 17; Ex. A at AG 203-204. Dr. Utecht's progress notes indicate that Plaintiff was angry about having his level of care dropped and began showing suicidal ideations through starvation. *Id.*; Ex. A at AG 203. Dr. Utecht noted that Plaintiff's medications included Buspirone (30 mg daily) and Lamotrigine (Lamictal at 50 mg daily). *Id.* Dr. Utecht also noted that Plaintiff had refused his morning dose of Buspar. *Id.* Dr. Utecht discontinued the Buspar because he found that it was not medically indicated, and Plaintiff was not complying with the prescription. *Id.*; Ex. A at AG 204. Dr. Utecht's Progress Notes show that Plaintiff said he would refuse "any psych meds" because he thought he did not need them. *Id.*

On April 28 and 29, 2016, medical staff noted that Plaintiff refused his prescription for Lamotrigine. McCall Decl. ¶ 18; Ex. A at AG 205-207. Plaintiff was informed that by refusing his medication, he was at risk of a major medical or mental health complication. *Id.*; Ex. A at AG 206-207. Plaintiff told staff, "No! I don't want it." *Id.*; Ex. A at AG 205.

According to Plaintiff's mental health records, PBSP on-call psychiatrist, Dr. Gene

9

Lubunao, was called by PBSP medical staff on May 3, 2016, to provide orders for one-to-one suicide watch because Plaintiff was exhibiting self-injurious behaviors. McCall Decl. ¶ 19; Ex. A at AG 208. Plaintiff's records show that on May 5, 2016, he was seen by psychiatrist Dr. Utecht to discuss medication compliance. *Id.*; Ex. A at 209. Dr. Utecht's progress notes indicated that Plaintiff had recently refused three Lamotrigine doses and refused two out of the six doses of Buspirone. *Id.* The medical staff recorded the "refusal" because Plaintiff refused to show his mouth as required under the Direct Observation Therapy order regarding his medication. *Id.* The order requires the Psych Tech to look into the patient's mouth to confirm he swallowed the medication. *Id.* Plaintiff said he took his medicine as ordered and he blamed the psych tech for following her instruction to verify through observation. *Id.*

According to Plaintiff's medical records, medical staff reported that on May 8, 2016, Plaintiff again refused his Lamotrigine prescription and became very angry and agitated with medical staff such that it would have been unsafe to attempt to give him his medication. McCall Decl. ¶ 20; Ex. A at AG 211. Plaintiff refused Lamotrigine again on May 24, 26, and 27, 2016, and again on June 2, 2016. *Id.*; Ex. A at AG 212-215.

On June 3, 2016, Plaintiff was transferred to the Department of State Hospitals and was no longer under the jurisdiction of California Correctional Health Care Services. McCall Decl. ¶ 21. Defendant McCall left the CDCR on July 14, 2016. *Id.*

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v.*

10

*Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001). A district court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773

(9th Cir. 2002).

### A.     <u>Deliberate Indifference</u>

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Doty*, 37 F.3d at 546; *see, e.g.*, *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010) (a heightened suicide risk or an attempted suicide is a serious medical need; reversing grant of summary judgment to transporting police officers where plaintiffs presented sufficient evidence for a jury to find that the decedent's pre-suicidal actions objectively evidenced a serious medical need), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011); *Capps v. Atiyeh*, 559 F. Supp. 894, 916 (D. Ore. 1983) (inmate suffers 8th Amendment pain whenever he must endure untreated serious mental illness for any appreciable length of time).

Under the Eighth Amendment, deliberate indifference requires a showing that prison officials possess a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, it must be shown both that officials were subjectively aware of the serious medical need and failed to adequately respond to that need. *Conn*, 591 F.3d at 1096. Put another way, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should

have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir, 2002). Additionally, the officials' actions must be the cause of the injury suffered as a result of their deliberate indifference. *Conn*, 591 F.3d at 1098. An isolated failure to respond to a non-serious medical need cannot, by itself, establish an unconstitutional health care system. *See Doty*, 37 F.3d at 547.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

### B. Analysis

Plaintiff claims that Defendant Afdahl made a false claim that he cheeked his medication and refused to take it. Dkt. No. 1 at 9. Plaintiff claims that Defendant Afdahl conspired with Defendant McCall to discontinue his mental health medications and to reduce another to a lower dosage. *Id.* Plaintiff claims that due to Defendants' interference with his mental health medication, he suffered psychological depression, anxiety, and symptoms associated with bipolar. *Id.* at 10. When he notified Defendants McCall and Afdahl that he was suffering anxiety, increased depression, mood swings, and symptoms associated with bipolar, they knowingly failed to respond. *Id.* Plaintiff claims that

13

Defendants acted with deliberate indifference to his serious mental health needs. *Id.*

Defendants concede in their summary judgment motion that a question of fact exists as to whether Plaintiff's mental health issues constitute a "serious medical need." Dkt. No. 104 at 11. They assert, however, that Plaintiff cannot establish that they knowingly disregarded a substantial risk of serious harm to Plaintiff. *Id.* To that end, Defendants assert that the issues for their motion are whether the discontinuation of Plaintiff's Lamictal prescription was (1) medically unacceptable under the circumstances and (2) chosen in conscious disregard of an excessive risk to Plaintiff's health. Dkt. No. 104 at 12. Defendants assert that Defendant McCall's declaration and supporting records show that her decision to stop the Lamictal prescription was appropriate under the circumstances, and that she had two equally compelling reasons for stopping the medication: (1) her evaluation of Plaintiff's symptoms and clinical presentation, and (2) his failure to adhere to the prescription, which could have fatal consequences. *Id.*

In his cross-motion, Plaintiff asserts that Defendants intentionally interfered with his prescribed medications with deliberate indifference to his serious mental health needs. Dkt. No. 123 at 1. He asserts in opposition to Defendants' motion that there exists a genuine issue of material fact that precludes summary judgment being granted in their favor. Dkt. No. 137 at 1.[7] Plaintiff asserts that when he arrived at PBSP, he had a valid prescription by a psychiatrist for Lamotrigine to treat his bipolar disorder and Buspirone to treat his diagnosed anxiety. *Id.* at 2; Dkt. No. 123 at 6. He asserts that Defendant McCall never spoke with him before discontinuing his medication on February 10, 2016, and that he received no medication to treat his bipolar disorder since that date through March 28, 2016. Dkt. No. 137 at 3, 21. Plaintiff states that he submitted requests for mental health

---

[7] In reply, Defendants object to several of Plaintiff's statements in his declaration as inadmissible hearsay and improper lay opinion of medical diagnoses and standard of care. Dkt. No. 138 at 2-3. Defendants are correct. Hearsay evidence is inadmissible and thus may not be considered on summary judgment. *See Orr*, 285 F.3d at 778. Accordingly, Plaintiff's statements referring to medical articles and other doctors' statements regarding treatment shall not be considered. *Id.*

14

treatment on February 22 and 25, 2016, such that both Defendants were aware of his increased mental health symptoms, but they did nothing. *Id.* at 4. Plaintiff also denies that Defendant McCall ever offered him decanoate as an alternative medication and that he declined it. *Id.* at 5. He asserts that every attempt to get mental health treatment for his bipolar symptoms and increased anxiety from Defendants were "meaningless." *Id.* at 6; Dkt. No. 123 at 11. He asserts that Defendants "must have known of a risk of harm" to him by the "obvious and extreme nature of Plaintiff's abnormal behavior and repeated request for mental health treatment." Dkt. No. 137 at 6-7; Dkt. No. 123 at 16.

In reply, Defendants assert that Plaintiff has not established that triable issues of fact remain regarding their alleged deliberate indifference to his mental health symptoms, and that his opposition provides no basis for disputing Defendant McCall's declaration that she based her medication decision on his failure to adhere to his prescription and the associated risks. Dkt. No. 138 at 1. They also argue that although Plaintiff clearly disagrees with Defendant McCall's decision, his disagreement does not establish a violation of his Eighth Amendment rights. *Id.*

After considering all the evidence submitted in support of Defendants' summary judgment motion and Plaintiff's cross-motion, the Court finds there exists no genuine issues of material fact to preclude summary judgment in favor of Defendants. *Riverside Two*, 249 F.3d at 1135. Assuming Plaintiff had serious mental health needs, there is no genuine issue of material fact with respect to the adequacy of Defendants' response to that need. *See Conn*, 591 F.3d at 1096. Defendant McCall treated Plaintiff from February 2, 2016 through March 8, 2016, during which they had three encounters. *See supra* at 4-9. When she began treating Plaintiff, Defendant McCall had over 15 years of experience as a psychiatrist treating patients with mood disorders, including anxiety, manic depression, and bipolar disorder. *Id.* at 3-4. Her initial assessment at their first meeting was that Plaintiff's symptoms were not consistent with his diagnosed history of bipolar disorder. *Id.* at 4. She believed that his mood varied way too quickly for his symptoms to even be

15

categorized as hypomania. *Id.* Defendant McCall therefore questioned the need for Lamictal to treat Plaintiff's symptoms as his bipolar diagnosis needed to be clarified. *Id.* Her working diagnosis was that Plaintiff had an unspecified personality disorder with antisocial and narcissistic traits. *Id.* at 8. Defendant McCall's clinical impression from their first meeting on February 2, 2016, remained the same in her evaluations of Plaintiff on their subsequent visits on February 23, and March 8. *Id.* at 4, 7-8. In her medical opinion, Lamictal was not indicated. *Id.* But even if Defendant McCall was incorrect in questioning Plaintiff's bipolar diagnosis and therefore the Lamictal prescription, she had another reason for concern, i.e., Plaintiff's failure to take the Lamictal as prescribed since staff had reported that Plaintiff failed to take the Lamictal for three straight days during the prior week. *Id.* at 3, 4. Defendant McCall therefore educated Plaintiff at their first meeting about the increased risk for contracting a potentially fatal rash due his varying adherence to the medication. *Id.* Nevertheless, she decided to renew his medication for 90 days since he was a new patient and had an existing diagnosis. *Id.* at 4. However, when she learned that Plaintiff had again failed to adhere to the Lamictal prescription with an alleged cheeking incident on February 9, 2016, despite her warnings at their first meeting the week prior, she decided to discontinue the medication the next day. *Id.* at 6. The fact that she did not discuss the matter again with Plaintiff before discontinuing the medication does not indicate deliberate indifference, especially since she had already discussed the risks for not adhering to his medication and she was now acting to abate the risk of harm to Plaintiff if he continued to skip dosages. Accordingly, the evidence shows that Defendant McCall's decision to discontinue Lamictal was reasonable, based on the increased risk to Plaintiff's health due to his failure to adhere to the prescription.

Moreover, as Defendants assert, even if Defendant McCall's clinical impression was incorrect and Lamictal was indicated to treat Plaintiff's bipolar condition, her decision at most amounts to negligence or medical malpractice, which is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060; *Hallett v. Morgan*,

16

296 F.3d 732, 744 (9th Cir. 2002). Nor does Plaintiff and Defendant McCall's difference in opinion with respect to his bipolar diagnosis and its proper treatment give rise to a § 1983 claim. *Franklin*, 662 F.2d at 1344. With regard to the fact that other doctors' treatment plans differed from Defendant McCall, a showing of nothing more than a difference of medical opinion over the course of treatment is insufficient, as a matter of law, to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Id.*; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). As discussed above, there is no evidence showing that Defendant McCall chose to discontinue the Lamictal with a conscious disregard of an excessive risk to Plaintiff's health but rather, the evidence shows that the medication change was based on an effort to reduce a risk to his health due to his failure to adhere to the prescription. Accordingly, it matters not that a previous psychiatrist had prescribed Lamictal or that a different doctor, Dr. Hutchinson, later decided to prescribe Lamictal where Defendant McCall's decision was not medically unacceptable under the circumstances and she did not choose this course in a conscious disregard of an excessive risk to Plaintiff's health. *Id.* Lastly, Plaintiff asserts that he had a medical need for Lamictal, but his actions indicate otherwise. The undisputed evidence shows that even after the Lamotrigine was again prescribed on March 29, 2016, Plaintiff repeatedly refused to take it during April and May 2016, until he was transferred to the Department of State Hospitals on June 3, 2016. *See supra* at 9-10.

With respect to Defendant Afdahl, the medical records submitted in evidence indicate only one encounter with Plaintiff, *i.e.*, on February 9, 2016, when Plaintiff refused to show her his mouth to confirm that he had swallowed his medication. *See supra* at 5; Ex. A at AG 101. According to Defendants, Defendant Afdahl followed CDCR procedure when she reported Plaintiff's cheeking on February 9, 2016. Dkt. No. 104 at 13.

17

According to Plaintiff, he denies that he cheeked his medication on that date and simply alleges that Defendant Afdahl lied about the incident. *See supra* at 5. However, Plaintiff does not deny that he refused to open his mouth to allow Defendant Afdahl to inspect the inside of his mouth. But even if it were true that Defendant Afdahl wrongly accused Plaintiff of cheeking, it does not establish that she acted with deliberate indifference to his serious mental health needs. Rather, it is undisputed that Defendant Afdahl's duty at the time was to ensure that Plaintiff was taking his medicine as prescribed. As a result of the incident, Plaintiff was not denied his medication; rather, the prison took steps to ensure that he adhered to his prescriptions by placing him on Direct Observation Therapy. *See supra* at 5. There is no evidence that Defendant Afdahl knew that Defendant McCall would discontinue the Lamictral completely if she falsely reported that Plaintiff was not taking his medication, and that she intended for that to happen, knowing it would place Plaintiff at a substantial risk of serious harm. Rather, the undisputed evidence shows that Defendant Afdahl acted to ensure that Plaintiff was actually swallowing the medication he needed to treat his mental health needs. That is not deliberate indifference.

Furthermore, there is no evidence to support Plaintiff's claim that Defendants Afdahl and McCall conspired to discontinue his medication. A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *Id.* Plaintiff's simple assertion that Defendants "conspired" is simply conclusory and not supported by factual allegations, much less any evidence, establishing a conspiracy, i.e., a "meeting of the minds." *Id.*

Lastly, Plaintiff's claim that Defendants were both aware of his worsening condition because he submitted two requests for mental health treatment on February 22

18

and 25, 2016, is unsupported by the evidence. With regard to Defendant Afdahl, the health care services request form submitted on February 22, 2016, makes no mention of Defendant Afdahl such that she might have been notified of Plaintiff's complaint against her, and neither was Defendant Afdahl involved in the response to this request. McCall Decl., Ex. A at AG 191. The same is true of the health care services request form submitted on February 25, 2016. *Id.*; Ex. A at 196. Accordingly, there is no evidence that Defendant Afdahl was involved in or was aware of Plaintiff's ongoing mental health needs after their one-time encounter on February 9, 2016, such that her failure to respond to that need would indicate deliberate indifference. Nor can Plaintiff establish an Eighth Amendment claim against Defendant Afdahl based on that single encounter. *See Doty*, 37 F.3d at 547.

With regard to Defendant McCall, as with Defendant Afdahl, her name was not mentioned in either of the requests for treatment discussed above, nor was she involved in the responses thereto. Although Plaintiff asserts generally in opposition that he notified Defendant McCall about his increased symptoms and she did nothing, Dkt. No. 137 at 49, there is no evidence that Defendant was actually aware that her modification of Plaintiff's medications was causing him further harm and yet she decided to disregard it. After changing his medications on February 10, 2016, Defendant McCall saw Plaintiff on February 23, 2016, and discussed his medication management. *See supra* at 6-7. According to the progress notes from that meeting and the subsequent meeting on March 8, 2016, her observations of Plaintiff's behavior noted no changes from one meeting to the next, and he did not exhibit any "extreme" or abnormal behavior. *Id.* Rather, there might have been an improvement since it was noted that Plaintiff "sometimes" exhibited suicidal and homicidal ideations at the February 8, 2016 meeting, and no such ideations at their last meeting on March 8, 2016. *See supra* at 4, 8. This evidence does not establish that Defendant McCall was actually aware or even that she "must have known of a risk of harm" due to the "obvious and extreme nature" of his abnormal behavior, as Plaintiff

19

asserts. Plaintiff also denies that Defendant McCall offered him a different medication, *i.e.*, decanoate, despite the detailed record of it provided in the progress notes. *Id.* at 7, 14. However, this fact is immaterial. Even if it were true that Defendant McCall did not offer alternatives, it does not render her decision to alter his medications constitutionally deficient. There is nothing in her progress notes from that meeting or the subsequent meeting on March 8, 2016, to indicate that Defendant McCall was aware that the changes she had made to Plaintiff's medications had caused his mental health to worsen such that her failure to respond indicates deliberate indifference. Even if she should have been aware of the risk and was not, as the evidence indicates, Defendant has not violated the Eighth Amendment, no matter how severe the risk. *Gibson*, 290 F.3d at 1188.

Based on the foregoing, the Court finds there are no genuine issues of material fact that exist to preclude summary judgment in favor of Defendants with respect to the Eighth Amendment claim against them. *Riverside Two*, 249 F.3d at 1135.

## CONCLUSION

For the reasons discussed above, Defendants M. McCall and J. Afdahl's motion for summary judgment is **GRANTED**. Dkt. No. 104. Plaintiff's cross-motion for summary judgment is **DENIED**. Dkt. No. 123. The Eighth Amendment claims against Defendants are **DISMISSED with prejudice**.

This order terminates Docket Nos. 104 and 123.

**IT IS SO ORDERED.**

**Dated: __June 18, 2020_____**

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge

Order Granting Defs.' MSJ; Denying Pl.'s MSJ
PRO-SE\BLF\CR.17\00326Hollis_grant.D-MSJ;deny.Pl-MSJ

20